IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DE'ANDRE STARNES,                )
                                 )
            Plaintiff,           )
                                 )
    v.                           )        1:15CV1002
                                 )
GILBARCO VEEDER-ROOT,            )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is a Motion to Dismiss or in the Alternative Motion for Summary Judgment filed by Defendant Gilbarco Veeder-Root ("Gilbarco"). (Doc. 15).) <u>Pro se</u> Plaintiff De'Andre Starnes ("Plaintiff") opposes the motion, (Docs. 21, 22, 23, 24), and Defendant has filed a reply (Doc. 25). Plaintiff has filed a surreply.[1] (Doc. 30.) Plaintiff has also

---

[1] The Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina allow for the filing of a motion, a response to a motion, and a reply. <u>See</u> LR7.3. Parties do not have the right to file a surreply unless an evidentiary objection is raised by the moving party in its reply memorandum. <u>See</u> LR7.6. The nonmoving party may then file a surreply addressing that issue within seven days. <u>Id.</u> Otherwise, courts generally "allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply." <u>DiPaulo v. Potter</u>, 733 F. Supp. 2d 666, 670 (M.D.N.C. 2010). Here, although Defendant raised no new arguments in its reply memorandum, and Plaintiff's surreply was filed 29 days after the reply, given the nature of this case and that Defendant did not object to the surreply, this court will take it into consideration.

filed a Motion to Strike Defendant's Joint Affidavit (Doc. 26), which was filed as an attachment to Defendant's motion to dismiss (Doc. 15-1).

Plaintiff seeks leave to file a Third Amended Complaint and add Teamsters Union, Local 391 ("Teamsters Union") as a party defendant. (Doc. 27.) In seeking to amend, Plaintiff restates the Second Amended Complaint in its entirety, proposes to file against Teamsters Union the same hybrid § 301/fair representation claim that is pending against Gilbarco, and seeks to add a claim as to both Defendants under 42 U.S.C. §§ 1985 and 1986. (Doc. 27-1.) Defendant has in turn responded in opposition to Plaintiff's motion for leave to amend, claiming that allowing Plaintiff leave to amend his complaint will not cure any defects, will be futile, and was made with undue delay. (Doc. 29.)

These matters are now ripe for adjudication. The procedural posture of this case, that is, with a pending motion to dismiss as well as a motion to amend that is objected to on the ground of futility, somewhat complicates this matter. The motion to dismiss encompasses similar issues to those raised in the objection to the motion to amend. In the interests of justice, judicial economy, and in an effort to address the issues in a coherent manner, this court finds that it is appropriate to

address the motion to dismiss and the motion to amend in this Memorandum Opinion and Order.

For the reasons stated herein, this court finds Plaintiff's pending claims deficient and that such deficiencies are not resolved by the proposed amendment. This court finds that re-pleading the deficient hybrid claim to include Teamsters Union would be futile and will therefore deny Plaintiff's request for leave to amend as to those claims. Further, this court finds Plaintiff's additional claims under §§ 1985 and 1986 are deficient and that allowing the motion to amend as to these claims would also be futile. Therefore, this court will deny Plaintiff's request for leave to amend, grant Defendant's motion to dismiss or in the alternative motion for summary judgment, and will deny Plaintiff's motion to strike.

## I.  <u>LEGAL STANDARD</u>

Pursuant to Fed. R. Civ. P. 12(d), courts have discretion to convert a Rule 12(b)(6) motion into one for summary judgment. <u>Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.</u>, 109 F.3d 993, 996 (4th Cir. 1997). A motion to dismiss pursuant to Rule 12(b)(6) is not converted into a motion for summary judgment by the mere submission or service of extraneous materials. <u>Id.</u> (considering issue in context of voluntary dismissal under Federal Rule of Civil Procedure 41(a)). However,

-3-

if on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If the court opts to convert the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (stating the opposing party has the right to file counter affidavits or pursue reasonable discovery). Generally, parties are on notice of a potential Rule 12(d) conversion if they are aware that materials outside the pleadings are before the court. Gay, 761 F.2d at 177.

Here, both parties were on notice of the potential conversion. Gilbarco's motion was one for summary judgment in the alternative (Doc. 15), and Gilbarco submitted a joint affidavit and various exhibits in support of its motion (Docs. 15-1 through 15-19). Plaintiff's responsive pleadings to Gilbarco's motion was captioned as an opposition to the motion to dismiss or in the alternative the motion for summary judgment (Docs. 23, 24), and Plaintiff likewise submitted material

-4-

outside the pleadings, including a counter affidavit (Doc. 24-2).[2]

Under similar circumstances, the Fourth Circuit concluded that on the basis of the plaintiff's own actions it appeared that the plaintiff had actual notice that the motion could be disposed of as one for summary judgment. Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998) ("The district court, while it clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, does not have an obligation to notify the parties of the obvious."). This is particularly true when plaintiffs and defendants refer to exhibits and affidavits in support of their arguments, as is the case here. See Tsai v. Md. Aviation, 306 F. App'x 1, 3–5 (4th Cir. 2008) (unpublished per curiam) (finding case before it distinguishable from Finley Lines and facts in accord with Laughlin) ("[The plaintiff] cannot plausibly argue that he lacked notice that [the defendant] was moving for summary judgment, given that he

_____

[2] This court ordered Plaintiff to respond to Gilbarco's motion to dismiss by June 17, 2016. (Doc. 20.) Plaintiff filed a response in opposition and a memorandum on June 17, 2016. (Docs. 21, 22, 22-1, 22-2.) Plaintiff filed an amended response and amended memorandum on June 20, 2016. (Docs. 23, 24, 24-1, 24-2.) Gilbarco did not object to Plaintiff's amended response and, in fact, discussed the amended response in its Reply. (Doc. 25.) Therefore, this court will take Plaintiff's amended response into consideration.

acknowledged as much in the title of his responsive pleading and even put additional evidence before the court of his own volition.").

Plaintiff has not objected to Gilbarco's motion in the alternative and has referenced it in his own pleadings and submitted a counter affidavit in support of his response. Nor has Plaintiff sought relief under Fed. R. Civ. P. 56(d).[3] As a result, this court finds the issues before the court may be decided based upon the pleadings and affidavits submitted. See Bullock v. United States, 176 F. Supp. 3d 517, 522–23 (M.D.N.C. 2016).

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

---

[3] Plaintiff has filed a Motion to Strike Defendant's Joint Affidavit, but argues that the affidavit should be stricken because it did not adhere to 28 U.S.C. § 1746, not because of any considerations related to whether summary judgment could be appropriately considered. (Doc. 26.) The motion to strike is discussed in further detail herein.

If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts"; the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted) (quoting Fed. R. Civ. P. 56(e)). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine dispute as to a material issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Nonetheless, the court must ensure that the facts it considers can be "presented in a form that would be admissible in evidence" and that any affidavits or evidence used to support or oppose a motion are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." See Fed. R. Civ. P. 56(c)(2), (4).

The court must view the facts in the light most favorable to the nonmoving party, drawing inferences favorable to that party if such inferences are reasonable. Anderson, 477 U.S. at 255. However, there must be more than a factual dispute, the

fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When a party is proceeding pro se, that party's filings are "to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). However, the principles calling for this "special judicial solicitude" in viewing pro se filings "does not transform the court into an advocate." United States v. Wilson, 699 F.3d 789, 797 (4th Cir. 2012) (internal quotation marks and citation omitted); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). If the non-movant fails to meet his burden, summary judgment must be granted. Celotex, 477 U.S. at 322.

## II.  **MOTION TO STRIKE**

As an initial matter, Plaintiff filed a motion to strike (Doc. 26) Defendant's joint affidavit of Brad Brown and Katelyn McGahey, which was filed in support of Defendant's motion to dismiss or alternatively for summary judgment (Doc. 15-1).

-8-

Plaintiff alleges in his motion to strike that Defendant's joint affidavit "does not adhere to Federal guidelines" pursuant to 28 U.S.C. § 1746. (Doc. 26 at 1.) Section 1746 states that:

> Wherever . . . any matter is required or permitted to be supported . . . by the sworn . . . affidavit, in writing of the person making the same . . . , such matter may, with like force and effect, be supported . . . by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . .

28 U.S.C. § 1746. Rule 56(c) of the Federal Rules of Civil Procedure provides that a party asserting that there is no genuine dispute as to any material fact must support the assertion by "citing to particular parts of materials in the record, including . . . affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath." Lumoa v. Potter, 351 F. Supp. 2d 426, 430 (M.D.N.C. 2004) (internal quotation marks omitted). An affidavit for purposes of summary judgment must also "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Here, Defendant presented an affidavit sworn to by both Katelyn McGahey ("Ms. McGahey") and Brad Brown ("Mr. Brown") before a notary public, asserting that the facts are "true of my

-9-

own knowledge." (Def.'s Mot. to Dismiss or in the Alternative Mot. for Summ. J. ("Def.'s Mot."), Attach. 1 ("Joint Aff.") (Doc. 15-1) at 17, 18.)[4] Because it appears that the Joint Affidavit is based on the affiants' personal knowledge and the affiants affirmed the truth of their statements under oath before a notary public, this court will deny Plaintiff's motion to strike (Doc. 26).

## III. **FACTUAL ALLEGATIONS**

Viewed in light most favorable to Plaintiff, the evidence shows the following:

Plaintiff was an hourly employee at Gilbarco. (Joint Aff. (Doc. 15-1) ¶ 8.) Teamsters Union had an agreement ("Labor Contract") with Gilbarco, and Plaintiff was subject to the terms of that Labor Contract. (Id. ¶ 7, 8.) Teamsters Union was the collective bargaining agent for Plaintiff, although Plaintiff elected not to pay member dues. (Id. ¶ 8.)

Gilbarco had an attendance policy in effect during Plaintiff's employment. (Id. ¶ 9.) The attendance policy tracked unexcused absences of Gilbarco employees and defined the corresponding discipline. (Second Am. Compl. ("Second Am.

---

[4] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Compl."), Ex. A ("Attendance Policy") (Doc. 8-1).) Unexcused absences were tracked on a point system, whereby each day of absence resulted in one point or occurrence, and tardiness or leaving work early resulted in a half point. (Id. ¶ 4.2.) After an employee accumulated nine occurrence points, he could be terminated. (Id. ¶ 5.4.6.) Gilbarco also had a call-in system requiring employees to call in at least one hour before the start of their shift to notify Gilbarco of a planned absence and the reason for the absence. (Id. ¶ 6.1.)

Per policy, each day of an unexcused absence counted as a separate occurrence unless there was an illness or injury causing an absence of three or more consecutive days and the employee presented a verifiable doctor's certification showing diagnosis from the first day of absence, treatment by the third day, and certification that the employee could return to work (known as an "Absent 3"). (Id. ¶ 4.2.2; Joint Aff. (Doc. 15-1) ¶ 15.) Employees could also use three vacation addendum days per calendar year to avoid having an absence count as a point. (Second Am. Compl., Ex. A (Doc. 8-1) ¶ 6.5.) Other vacation days could be applied to absences, but it would not result in an absence being excused or elimination of an occurrence point. (Id.)

-11-

On Plaintiff's first day of employment, he signed an acknowledgment that he received a copy of Gilbarco's Attendance Policy, call-in system, and the Labor Contract. (Joint Aff. (Doc. 15-1) ¶ 24.)

On January 29, 2015, Plaintiff was issued his first written warning for his accrual of 3.5 points pursuant to the Attendance Policy. (Id. ¶ 27.) On February 23, 2015, Plaintiff received a one-day suspension, which was carried out on February 24, 2015, for his accumulation of 7.5 points pursuant to the Attendance Policy. (Id. ¶ 28.) Plaintiff alleges that at that time he inquired about the use of vacation days to reduce his point total and that in response, Mr. Brown applied Plaintiff's vacation hours to another day when he was absent. (Second Am. Compl. (Doc. 8) ¶ III.1.) Mr. Brown applied the vacation day immediately. (Pl.'s Am. Mem. in Supp. of Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Br.") (Doc. 24) at 2.) Although February 24, 2015, was a suspension day, it erroneously appears as an unexcused absence on Plaintiff's termination letter. (Pl.'s Br., Response to Joint Aff. ("Pl.'s Aff.") (Doc. 24-2) ¶ 37B.)

Following the one-day suspension, Plaintiff called in sick on February 25, 26, and 27; called in a vacation day on March 2; and called on March 3 to report that he would be out until March 9. (Joint Aff. (Doc. 15-1) ¶ 30.) On March 3, 2015,

Plaintiff sent an email to Ms. McGahey stating that "I have been out of work since 2/25/15 due to unanticipated medical reason's [sic] and won't return until 3/9/15." (Pl.'s Br., Ex. A (Doc. 24-1) at 2.) Plaintiff alleges he was out from February 24, 2015 to March 8, 2015, because of medical advice. (Second Am. Compl. (Doc. 8) ¶ III.2.) On March 9, 2015, Plaintiff returned to work. (Joint Aff. (Doc. 15-1) ¶ 31.)

On March 10, 2015, Plaintiff, Ms. McGahey, Mr. Brown, and Wayne Snow ("Mr. Snow"), the shop steward or union representative, had a meeting regarding Plaintiff's accumulation of occurrence points and additional discipline pursuant to the Attendance Policy. (Id. ¶ 32.) During the March 10, 2015 meeting, Plaintiff was issued the following discipline: a second written warning for the accumulation of 5.5 points; a final written warning for the accumulation of 6.5 points; a one-day suspension for the accumulation of 7.5 points; and a three-day suspension for the accumulation of 8.5 points. (Id. ¶ 33.)

It was also determined at this meeting that Plaintiff was erroneously assessed one occurrence point for an absence on February 10, 2015, when in fact Plaintiff was present at work that day. (Id. ¶ 37A.) Plaintiff alleges that Ms. McGahey and Mr. Brown refused to correct this error and purported to substitute the February 27, 2015 absence for this point. (Pl.'s

-13-

Br. (Doc. 24) at 9.) The February 10 date was struck through on the March 10, 2015 one-day suspension notice and the March 10, 2015 three-day suspension notice; the February 27 absence was written in on the three-day suspension notice. (Second Am. Compl., Ex. B (Doc. 8-2) at 4-5.) The February 10, 2015 date is included on the termination letter. (Id. at 6-7.)

Plaintiff's doctor's note dated February 26, 2015, was also discussed at the meeting. (Joint Aff. (Doc. 15-1) ¶ 37B.) Plaintiff alleges that the doctor's note was altered by Mr. Snow by the addition of the handwritten date. (Second Am. Compl., Ex. C (Doc. 8-3) at 2; Pl.'s Br. (Doc. 24) at 5-6.) Plaintiff wanted this note to cover his absences from February 24 through March 8 so as to count as an Absent 3 under the Attendance Policy. (Pl.'s Aff. (Doc. 24-2) ¶¶ 32, 37B.) Plaintiff was temporarily allowed to count February 24-26 as an Absent 3 for one point pending Plaintiff providing a new doctor's note showing diagnosis on day one of his absence. (Joint Aff. (Doc. 15-1) ¶ 37B.) Plaintiff also presented a doctor's note dated March 2, 2015, which covered Plaintiff's absences from March 2 to March 6, and was treated as an Absent 3 to allow for the accumulation of only one point for those dates. (Id. ¶ 37C.)

At the March 10, 2015 meeting, Plaintiff was informed that he was over the nine points required for termination of his

-14-

employment. (Id. ¶ 38.) Plaintiff asked if he could use vacation hours to reduce his point total but was advised it was against policy and was not allowed a reduction. (Pl.'s Br. (Doc. 24) at 7.) Plaintiff asked if he could use the "extenuating circumstances" policy to apply to one of his absences, but HR determined that car troubles were not considered "rare and unusual" as required for this excuse. (Pl.'s Aff. (Doc. 24-2) ¶ 37E; Joint Aff. (Doc. 15-1) ¶ 37E.) However, there was the unresolved issue of whether Plaintiff would present a revised doctor's note for the absences beginning February 24, 2015. (Joint Aff. (Doc. 15-1) ¶ 39.) Thereafter, Plaintiff began his three-day suspension and was to return to work on March 16, 2015. (Id. ¶ 40.)

On March 12 and 13, 2015, Plaintiff emailed Ms. McGahey for clarification of his point total and possible termination. (Second Am. Compl., Ex. E (Doc. 8-5) at 1.) Ms. McGahey first advised Plaintiff that he was expected to return to work the following Monday, but that if he did not present a new doctor's note, they may proceed with termination. (Id.) In the second email, Ms. McGahey advised Plaintiff that "[i]t is up to you if you wish to return but a final decision will be made by Tuesday with the production of a note or not." (Id.) Plaintiff did not provide his March 13, 2015 doctor's note to Gilbarco. (Pl.'s

Aff. (Doc. 24-2) ¶ 60.) In response to Ms. McGahey's email, Plaintiff stated that he would "like to have a grievance discussion" with Mr. Brown. (Second Am. Compl., Ex. E (Doc. 8-5) at 1.) Plaintiff alleges he never received a response to this request. (Pl.'s Aff. (Doc. 24-2) ¶ 40.)

Plaintiff did not return to work on March 16, thus receiving an additional occurrence point per the Attendance Policy. (Joint Aff. (Doc. 15-1) ¶ 41.) Ms. McGahey mailed Plaintiff a letter on March 16, 2015, terminating Plaintiff's employment. (Id. ¶ 42.)

Gilbarco employees asserting a violation of the Labor Contract can file a grievance, or Teamsters Union can file a grievance on the employee's behalf. (Second Am. Compl., Ex. D (Doc. 8-4) § 22.2.) Following Plaintiff's termination, Mr. Snow, in his capacity as shop steward, filed a grievance dated March 17, 2015, protesting Plaintiff's termination. (Def.'s Mot. Ex. N (Doc. 15-15) at 2.) Plaintiff alleges that he was never informed of this grievance procedure. (Pl.'s Aff. (Doc. 24-2) ¶ 45.) Plaintiff alleges that his own request for a grievance was ignored and that he was unware of Mr. Snow's actions or any denial at this stage. (Id. ¶ 46.)

Mr. Brown denied the grievance filed by Mr. Snow at Step 1. (Joint Aff. (Doc. 15-1) ¶ 46.) Mr. Snow appealed to Step 2,

where the grievance was again denied. (Def.'s Mot., Ex. N (Doc. 15-15) at 2.) Plaintiff asserts he was not notified of the Step 2 meeting or provided a copy of the written answer to Step 2. (Pl.'s Aff. (Doc. 24-2) ¶ 47.) Mr. Snow appealed to Step 3, but the Union withdrew the grievance during the Step 3 meeting on March 30, 2015. (Joint Aff. (Doc. 15-1) ¶ 48.) Plaintiff asserts that he was never notified of a Step 3 meeting and received no documentation that the grievance process had been completed. (Pl.'s Br. (Doc. 24) at 13.)

Plaintiff alleges he was barred from the grievance process and that no legitimate decision or process was completed by Gilbarco or Teamsters Union. (Id. at 13-14.) Plaintiff also asserts that Teamsters Union had a "rule of practice" that they would not represent non-union members. (Pl.'s Aff. (Doc. 24-2) ¶¶ 20, 29, 31-32.) Because of this, on or about August 10, 2015, Plaintiff filed a charge against Teamsters Union with the Equal Employment Opportunity Commission ("EEOC") alleging that he "was not represented fairly by the Union, because of [his] non-member status." (Doc. 32 at 2.) Additionally, on or about August 24, 2015, Plaintiff filed a charge against Teamsters Union with the National Labor Relations Board ("NLRB") alleging that "on or around 2/2015 – 3/16/2015" Plaintiff was "denied fair and equal representation" by Teamsters Union, was "denied access to the

grievance and arbitration processes," and was discharged from
his job because he was a non-union member. (Def.'s Mot., Ex. O
(Doc. 15-16) at 2.)

On or about November 18, 2015, Plaintiff filed a First
Amended Charge with the NLRB against Teamsters Union alleging
that "[s]ince on or about May 9, 2015," Teamsters Union violated
his rights by refusing to represent him because of his non-
membership in the Union. (Id., Ex. P (Doc. 15-17) at 2.)

Plaintiff also alleges that his employment was terminated
because of his disability. (Second Am. Compl. (Doc. 8) ¶ III.2.)
Plaintiff alleges he suffered from neuropathy, carpal tunnel
syndrome, and a left shoulder injury. (Pl.'s Br. (Doc. 24) at 9-
10). Ms. McGahey and Mr. Brown allege they had no knowledge of
these conditions and no knowledge of the nature of Plaintiff's
sickness or medical conditions during his absences. (Joint Aff.
(Doc. 15-1) ¶¶ 51-55.) Plaintiff alleges that Ms. McGahey and
Mr. Brown "had knowledge that [his] absences were of a medical
nature when [he] emailed [Ms. McGahey and] Gilbarco on 3/3/15 as
well as when [he] provided notes from [his] care provider on
3/9/15." (Pl.'s Aff. (Doc. 24-2) ¶¶ 51-52.) Plaintiff further
alleges that "[i]t is conceivable that" his coworkers informed
Mr. Brown of Plaintiff's "shoulder injury" and that this
information could have been "relayed to [Ms. McGahey] and

-18-

others." (Id. ¶¶ 54-55.) Plaintiff also "thinks" that when Mr. Brown spoke to Plaintiff's coworkers, "he gleaned information regarding my disability." (Second Am. Compl. (Doc. 8) ¶ III.1.)

Ms. McGahey and Mr. Brown allege that if Plaintiff had a disability, it did not affect his ability to perform his job duties. (Joint Aff. (Doc. 15-1) ¶ 56.) Plaintiff alleges that his job was performed as expected, but his ability to do his job "was affected in a major capacity." (Pl.'s Br. (Doc. 24) at 11; Pl.'s Aff. (Doc. 24-2) ¶ 56.) On August 10, 2015, Plaintiff filed a charge against Gilbarco with the EEOC alleging that he was "discriminated against on the basis of [his] disability, in violation of the Americans with Disabilities Act." [5] (Doc. 32 at 3.)

## IV. **MOTION TO DISMISS**

In his complaint, Plaintiff asserts claims based on violations of the Americans with Disabilities Act ("ADA") and

---

[5] Plaintiff's EEOC charge against Gilbarco also alleges that he was "discriminated against on the basis of [his] race (black/African-American) in violation of Title VII of the Civil Rights Act." (Doc. 32 at 3.) However, neither Plaintiff's complaint nor proposed amended complaint contain a Title VII claim and it appears this claim has been abandoned. See Maniccia v. Brown, 171 F.3d 1364, 1367 n.1 (11th Cir. 1999) (citing Case v. State Farm Mut. Auto. Ins. Co., 294 F.2d 676, 678 (5th Cir. 1961) for the proposition that liberal construction accorded to a pleading does not require courts to fabricate a claim that a plaintiff has not spelled out in his pleadings).

breaches of the Labor Contract. Through his motion to amend, Plaintiff seeks to amend the breach of contract claim, add Teamsters Union as a party defendant, and add claims under 42 U.S.C. §§ 1985 and 1986. Plaintiff does not seek to amend his ADA claim. Because aspects of Plaintiff's claims are clearly deficient based on procedural or substantive defects, this court will discuss dismissal of Plaintiff's claims before turning to Plaintiff's motion for leave to amend.

### A. **Disability Discrimination under the ADA**

In both his second amended complaint and proposed third amended complaint, Plaintiff states a claim against Gilbarco for wrongful or discriminatory discharge under the ADA, 42 U.S.C. § 12101 et seq. (See Second Am. Compl. (Doc. 8); Mot. to File Third Am. Compl. & Add Def., Ex. 1, Third Am. Compl. ("Proposed Am. Compl.") (Doc. 27-1).) Gilbarco challenges the merits of Plaintiff's disability discrimination claim, arguing that "1) Plaintiff's violation of the attendance policy is a legitimate non-discriminatory reason for his discipline and discharge, and 2) Gilbarco had no knowledge of Plaintiff's purported disability." (Def.'s Mem. in Supp. of Mot. to Dismiss or in the Alternative Mot. for Summ. J. ("Def.'s Br.") (Doc. 16) at 1-2.)

In the absence of direct evidence of discriminatory intent, disability discrimination claims under the ADA proceed under the

McDonnell Douglas burden-shifting framework. See Perry v. Computer Scis. Corp., 429 F. App'x 218, 219-20 (4th Cir. 2011). Under that framework, a plaintiff must first present a prima facie case of disability discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To establish a prima facie case of discriminatory discharge under the ADA, a plaintiff must show that "(1) he was a qualified individual with a disability; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (internal quotations omitted); see Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001) (citations omitted).

If a prima facie case is established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. Perry, 429 F. App'x at 220. If an employer does so, "the plaintiff then has an opportunity to prove by a preponderance of the evidence that the neutral reasons offered by the employer 'were not its true reason, but were a pretext for discrimination.'" Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (quoting

<u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).

For purposes of its summary judgment motion, Gilbarco does not contest that Plaintiff was disabled within the meaning of the ADA. Gilbarco's argument focuses on Plaintiff's inability to establish the fourth element, stating that "the circumstances of Plaintiff's discharge cannot give rise to any inference of discrimination because Gilbarco was not aware of Plaintiff's purported disability." (Def.'s Br. (Doc. 16) at 10.)

"Liability in a disparate-treatment case 'depends on whether the protected trait . . . actually motivated the employer's decision.'" <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 52 (2003) (quoting <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610 (1993)). If this court assumes that Plaintiff met his burden in establishing that he was disabled under the ADA, Plaintiff still must present some "affirmative evidence that disability was a determining factor in the employer's decision. . . . While [this] burden is not onerous, it is also not empty or perfunctory." <u>Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.</u>, 53 F.3d 55, 59 (4th Cir. 1995) (internal citations and quotations omitted). As the district court in <u>Feldman v. Law Enf't Assocs. Corp</u> stated,

> because liability under the ADA requires the employer
> to have discriminated because of the employee's

-22-

> disability, it follows that the employee must show
> that the employer knew of his alleged disability at
> the time it took the adverse employment action. That
> is, "an employee cannot be fired 'because of' a
> disability unless the decisionmaker has <u>actual</u>
> knowledge of the disability."

<u>Feldman v. Law Enf't Assocs. Corp.</u>, 955 F. Supp. 2d 528, 539–40 (E.D.N.C. 2013), <u>aff'd</u>, 752 F.3d 339 (4th Cir. 2014) (quoting <u>Cordoba v. Dillard's, Inc.</u>, 419 F.3d 1169, 1185 (11th Cir. 2005)).

Here, Plaintiff argues that it "is not necessary" for Gilbarco to have knowledge of the nature of his medical conditions. (Pl.'s Aff. (Doc. 24-2) ¶¶ 51, 52.) However, Plaintiff also asserts that Mr. Brown talked to Plaintiff's coworkers about him and that "[i]t is conceivable that they did inform [Mr. Brown] of [Plaintiff's] shoulder injury" and that "information could have been passed from [Mr. Brown] to [Ms. McGahey]." (<u>Id.</u> ¶¶ 54, 55.) Plaintiff further argues that Gilbarco had "knowledge that [his] absences were of a medical nature" from his email on March 3, 2015, and the doctor's notes he provided. (<u>Id.</u> ¶¶ 51, 52.) Plaintiff's March 3, 2015 email stated that Plaintiff had "been out of work since 2/25/15 due to unanticipated medical reason's [sic]." (Doc. 24-1) at 2.) Plaintiff's February 26, 2015 doctor's note stated Plaintiff would be out "due to illness." (Second Am. Compl., Ex. C (Doc.

-23-

8-3) at 2.) His March 2, 2015 doctor's note did not state the reason for Plaintiff's absence that week. (Id. at 1.)

Plaintiff's argument that Gilbarco's knowledge of a disability could be inferred from this information is not persuasive. Plaintiff never directly mentioned that he was suffering from neuropathy, carpal tunnel syndrome, or a left shoulder injury, and Gilbarco "should not be held responsible for guessing that [an illness] had progressed to a point where [the plaintiff] was a disabled person under the ADA." Schneider v. Giant of Md., LLC, 389 F. App'x 263, 270-71 (4th Cir. 2010) (citing Huppenbauer v. May Dep't Stores Co., 99 F.3d 1130, 1996 WL 607087, at *4 (4th Cir. Oct. 23, 1996) (unpublished)). Plaintiff's assertions that Gilbarco was put on notice by statements that he was out for several days for an "illness" or an "unanticipated medical reason" is not enough. "'Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA.'" Huppenbauer, 1996 WL 607087, at *6 (quoting Movisky v. Broward County, 80 F.3d 445, 448 (11th Cir. 1996)).

That "it is conceivable" that Mr. Brown and Ms. McGahey learned of a shoulder injury from coworkers is likewise not sufficient evidence to support that Gilbarco terminated him on the basis of a disability. See Huppenbauer, 1996 WL 607087, at

-24-

*4 (stating that if all employee's coworkers knew that he had a
heart condition, such knowledge would not amount to notice to
employer that employee had a disability requiring special
accommodation); see also Tramp v. Associated Underwriters, Inc.,
768 F.3d 793, 805 (8th Cir. 2014) (stating that a claim that
employee was terminated based on disability failed as a matter
of law because employee must show that the decisionmakers knew
about alleged disability, and evidence that others were
"generally aware" of a surgery was not enough). The evidence in
the record does not support that at any time on or before
Plaintiff's termination, Gilbarco knew that Plaintiff had a
disability.

As the Seventh Circuit explained:

> . . . .
>
> At the most basic level, it is intuitively
> clear when viewing the ADA's language in a
> straightforward manner that an employer
> cannot fire an employee "because of" a
> disability unless it knows of the
> disability. If it does not know of the
> disability, the employer is firing the
> employee "because of" some other reason.

Huppenbauer, 1996 WL 607087, at *6-7 (quoting Hedberg v. Indiana
Bell Telephone Co., Inc., 47 F.3d 928, 932 (7th Cir. 1995)).
Thus, if Gilbarco was unaware that such a disability existed, it
would be impossible for the termination decision to have been
based, even in part, on Plaintiff's disability. "And, if no part

-25-

of the [termination] decision turned on [Plaintiff's] status as disabled, he cannot, <u>ipso facto</u>, have been subject to disparate treatment." <u>Raytheon Co.</u>, 540 U.S. at 54-55 n.7.

Additionally, Gilbarco proffered a legitimate non-discriminatory reason for discharging Plaintiff, that is, his numerous violations of the Attendance Policy. "The law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability." <u>Jones v. Am. Postal Workers Union</u>, 192 F.3d 417, 429 (4th Cir. 1999). Although there appeared to be some confusion or disagreement between the parties about Plaintiff's occurrence point accumulation, viewing the facts in light most favorable to Plaintiff and drawing reasonable inferences favorable to Plaintiff, Gilbarco had a non-discriminatory reason for terminating Plaintiff pursuant to Attendance Policy violations. There is no dispute that Plaintiff was absent at least 15 days and tardy at least one day from January 13, 2015 to March 16, 2015. It is also evident that Plaintiff's February 26, 2015 doctor's note did not comply with Absent 3 requirements, and Plaintiff chose not to submit his March 13, 2015 doctor's note to Gilbarco. The Fourth Circuit has stated that "the discharge of an employee on attendance, if properly established, is

sufficient to rebut an inference of discrimination and shift the burden of production to the plaintiff in a disparate treatment case." Warren v. Halstead Indus., Inc., 802 F.2d 746, 756 (4th Cir. 1986).

Plaintiff offers evidence that he had 20 vacation hours on record that he was not permitted to use by Gilbarco other than a Vacation Addendum day. (Pl.'s Br. (Doc. 24) at 2; Pl.'s Aff. (Doc. 24-2) ¶ 41.) However, the Attendance Policy states that other than three Vacation Addendum days, the application of vacation days does not result in an absence being excused and the employee "will still receive an occurrence point even though he/she may choose to apply a vacation day to the absence." (Second Am. Compl., Ex. A (Doc. 8-1) ¶ 6.5.) Plaintiff also claims that certain union members were rehired or allowed to remain employed after violating the Attendance Policy because they were union members. (Pl.'s Aff. (Doc. 24-2) ¶ 32.) This evidence offered by Plaintiff fails to demonstrate bad faith by Gilbarco in penalizing him for his absences. Gilbarco's rationale for terminating Plaintiff has not been rebutted by Plaintiff so as to call it into question as pretext.

For these reasons, this court will grant the motion for summary judgment on Plaintiff's discrimination claim against Gilbarco. Moreover, this court finds it would be futile for

Plaintiff to restate his ADA discrimination claim against Gilbarco in his amended complaint, and as a result, Plaintiff is not granted leave to amend his complaint in this manner.

**B.** **Breach of Labor Contract/ Breach of Fair Representation**

Plaintiff alleges that Gilbarco breached the Labor Contract in its discipline and termination of him and in not following the grievance process thereafter. (Second Am. Compl. (Doc. 8).) Plaintiff also alleges that Teamsters Union refused to properly represent him in the grievance process because he was not a member of the union. (Id.) Gilbarco argues that Plaintiff's claim is a hybrid § 301/fair representation action and is barred by the six-month statute of limitations established in DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151 (1983). (Def.'s Br. (Doc. 16) at 12-14.)

The DelCostello six-month statute of limitations applies to what the Supreme Court has labeled a "hybrid § 301/fair representation" claim. 462 U.S. at 165, 170-72. This hybrid claim comprises two causes of action – one against the employer pursuant to § 301 of the Labor Management Relations Act and the other against the union. Id. "The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which

-28-

is implied under the scheme of the National Labor Relations Act." Id. at 164. The hybrid § 301/fair representation claim amounts to a challenge to the private settlement of disputes agreed upon by the employer and the union in the labor agreement. Id. at 165. An employee may sue his employer or the union, but these two claims are "inextricably interdependent" and the case Plaintiff must prove "is the same whether he sues one, the other, or both." Id. at 164-65. Therefore, the initial inquiry for this court is whether Plaintiff's action is a hybrid § 301/fair representation claim. This court finds that it is.

The Labor Agreement between Gilbarco and Teamsters Union provided grievance and arbitration procedures for an employee to contest his termination. (Second Am. Compl., Ex. D (Doc. 8-4) ¶¶ 22.1-22.16.) The grievance procedure "contemplates that both employer and union will perform their respective obligations." Bowen v. U.S. Postal Serv., 459 U.S. 212, 227 (1983). Plaintiff argues that be was wrongfully terminated and denied access to the grievance process by Gilbarco and that Teamsters Union failed to fairly and equally represent him. (Pl.'s Br. (Doc. 24) at 12-14.) The initial grievance was denied by Gilbarco, and Teamsters Union withdrew the appeal at Step 3, making it a final decision under the Labor Contract. (See Second Am. Compl., Ex. D (Doc. 8-4) ¶ 22.10.) Plaintiff may remove the

bar of finality only through proof of a breach of the Labor Contract by Gilbarco and a breach by Teamsters Union of its duty of fair representation. DelCostello, 462 U.S. at 165.

Having found DelCostello's six-month statute of limitations applicable, this court must now determine when Plaintiff's cause of action accrued. Gilbarco alleges that (1) the breach of contract claim accrued when Plaintiff was terminated on March 16, 2015; (2) the fair representation claim accrued when Teamsters Union withdrew the grievance on March 30, 2015; and (3) because Plaintiff did not file this lawsuit until November 25, 2015, almost eight months later, his claim is barred. (Def.'s Br. (Doc. 16) at 12-14.) Plaintiff asserts that the statute of limitations has not begun to run or is inapplicable because he was blocked access to the grievance process and never received notice of the grievance meetings or that the grievance process had been concluded. (Pl.'s Br. (Doc. 24) at 13-14.)

"The general rule is that a cause of action accrues when the plaintiff knows or should have known that a violation of his rights has occurred." Gilfillan v. Celanese Ag, 24 F. App'x 165, 167 (4th Cir. 2001) (unpublished) (citing Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)); see Bey v. United Parcel Serv., Inc., Civil Action No. 5:05CV208, 2006 WL 5939398, at *5

-30-

(W.D.N.C. Feb. 9, 2006), aff'd, 196 F. App'x 166 (4th Cir. 2006). In a hybrid § 301/fair representation claim, the claim accrues "when the plaintiff could first successfully maintain a suit based on that ca[u]se of action . . . or when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." Bey, 2006 WL 5939398, at *5; Gilfillan, 24 F. App'x at 167 (citing Santos v. District Council & Vicinity of United Bhd. of Carpenters & Joiners of Am., 619 F.2d 963, 968-69 (2d Cir. 1980) and Metz v. Tootsie Roll Indus., Inc., 715 F.2d 299, 304 (7th Cir. 1983)).

This court finds the cause of action accrued, at the latest, when Teamsters Union failed to proceed with the grievance on March 30, 2015. See, e.g., Rogers v. Lockheed-Georgia Co., 720 F.2d 1247, 1250 (11th Cir. 1983) (grievance not submitted by union for arbitration); Metz, 715 F.2d at 303-06 (union failed to process grievance). At that point, Plaintiff could successfully maintain a suit based on that cause of action. See Santos, 619 F.2d at 968-69.

Although Plaintiff asserts he was unaware that Teamsters Union had filed a grievance on his behalf, Plaintiff alleges he started the grievance process himself by emailing Ms. McGahey on

or about March 13, 2015. (Second Am. Compl. (Doc. 8) ¶ III.4;[6]
Ex. E (Doc. 8-5).) Pursuant to the Labor Contract, "[w]ithin
five (5) working days of the occurrence . . . the aggrieved
employee shall discuss the matter with his Area Administrator. .
. . The Area Administrator shall answer the grievance within two
(2) working days of this discussion." (Id., Ex. D (Doc. 8-4)
¶ 22.2.) The Labor Contract then provides that if Gilbarco's
representative fails to give an answer within the given time
limit, the grievance may be appealed to the next step. (Id.
¶ 22.5.) The Labor Contract also provides that "in the case of a
discharge grievance, it may be appealed directly from Step 1 to
Step 3 . . . within (5) days of the answer in Step 1." (Id.
¶ 22.4.) Plaintiff contends Gilbarco ignored his grievance
request and then sent him a notice of termination on March 16,
2015. (Second Am. Compl. (Doc. 8) ¶ III.4.)[7] However, Plaintiff
took no further actions to appeal his grievance under the
provisions of the Labor Contract.

---

[6] The Second Amended Complaint contains two paragraphs
labeled III.4. (Second Am. Compl. (Doc. 8) at 3.) This citation
refers to the second III.4 paragraph in the Second Amended
Complaint.

[7] The Second Amended Complaint contains two paragraphs
labeled III.4. (Second Am. Compl. (Doc. 8) at 3.) This citation
refers to the second III.4 paragraph in the Second Amended
Complaint.

On March 16, 2015, Plaintiff reasonably should have been aware of the acts constituting the alleged violations, and per his charges to the NLRB, was aware of those alleged violations. See Bacheldor v. Int'l Bhd. of Elec. Workers, No. 7:10-CV-228-BO, 2011 WL 9210457, at *3 (E.D.N.C. Apr. 21, 2011), aff'd, 451 F. App'x 256 (4th Cir. 2011). Pursuant to the Labor Contract, Plaintiff presumably had five days to file an appeal, which he did not do. Plaintiff knew or at least should have known that under the provisions of the Labor Contract the time to further appeal the grievance had arrived. Furthermore,

> [t]o say, . . . , that the running of the statute of limitations will be postponed indefinitely until actual notification is received from the Union or the employer, would be contrary to the policy of prompt resolution. Lack of notification would leave claims unresolved indefinitely and leave the procedure open to all the vices which statutes of limitations were intended to eliminate.

Samuels v. Am. Transit Corp., 595 F. Supp. 840, 843 n.5 (M.D.N.C. 1984) (citing Metz, 715 F.2d at 304).

Therefore, the latest that the final determination of Plaintiff's grievance could have occurred was March, 30, 2015, when Teamsters Union withdrew the grievance. Thus, the action would have been timely if filed on or before September 30, 2015. Plaintiff did not file this action until November 25, 2015, which is outside the six-month statute of limitations established by DelCostello.

-33-

Finally, it should be noted that Plaintiff's filing of a charge with the NLRB did not toll the statute of limitations. See Kolomick v. United Steelworkers of Am., Dist. 8, 762 F.2d 354, 355–56 (4th Cir. 1985) (filing and pendency of an unfair labor practice claim before the NLRB does not toll the statute of limitations for filing a hybrid § 301 action in federal court). Nor did that filing satisfy the commencement of the action for the six-month statutory filing period. See Fed. R. Civ. P. 3.

For these reasons, this court will dismiss Plaintiff's hybrid § 301/fair representation claim against Gilbarco. Moreover, in accordance with the standard for leave to amend as discussed below, this court finds it would be futile for Plaintiff to add Teamsters Union as a party defendant under this claim as pled in his proposed amended complaint because the claim is barred by the statute of limitations. Cf. Waller v. Butkovich, 584 F. Supp. 909, 920 (M.D.N.C 1984) (finding it futile to add additional plaintiff when claims barred by statute of limitations). As a result, Plaintiff will not be granted leave to amend his complaint in this manner.

## V. LEAVE TO AMEND

Generally, the decision of whether to grant leave to amend is in a district court's discretion. Foman v. Davis, 371 U.S.

-34-

178, 182 (1962). Federal Rule 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citation omitted); Foman, 371 U.S. at 182.

Gilbarco's arguments against allowing Plaintiff leave to amend his complaint largely relate to the alleged futility of the amendment. (Doc. 29.) "Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510-11 (citations omitted) (finding no futility where the resolution required complex arguments and factual inquiries); see Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980) (citation omitted). When addressing the futility of a proposed amendment, the Fourth Circuit has stated that "[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, conjecture about the merits of the litigation should not enter into the

-35-

decision whether to allow amendment." Davis, 615 F.2d at 613 (citation omitted).

On the face of the proposed Third Amended Complaint, Plaintiff seeks to add a claim pursuant to 42 U.S.C. §§ 1985 and 1986 against Gilbarco and Teamsters Union for conspiring against him because he was not a union member. (Proposed Am. Compl. (Doc. 27-1) at 4.) The proposed amended complaint alleges that "[i]n violation of US Code 42 Section 1985 and 1986; the Teamsters and Gilbarco committed several acts of conspiracy. My constitutional rights privileges or immunities of [sic] been violated." (Id.)

Based on Plaintiff's proposed amended complaint, it appears he is basing his claim on 42 U.S.C. § 1985(3), which outlaws conspiracy to deprive

> any person or class of persons of the equal protection
> of the laws, or of equal privileges and immunities
> under the laws; or for the purpose of preventing or
> hindering the constituted authorities of any State or
> Territory from giving or securing to all persons
> within such State or Territory the equal protection of
> the laws . . . .

42 U.S.C. § 1985(3).

"The Fourth Circuit applies a relatively stringent standard for establishing section 1985 conspiracies . . . [and] has rarely, if ever found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." Mbadiwe v. Union

Mem'l Reg'l Med. Ctr., Inc., No. 3:05CV49-MU, 2005 WL 3186949, at *3 (W.D.N.C. Nov. 28, 2005) (internal citation and quotation marks omitted) (quoting Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995)). "The law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." Simmons, 47 F.3d at 1377. Plaintiff must also allege, and ultimately prove, "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); see also Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir. 1985) (including the "purpose requirement" as an element). Consequently, "section 1985(3) is not a general federal tort statute and does not reach conspiracies motivated by economic or commercial animus." Ward v. Coastal Carolina Health Care, P.A., 597 F. Supp. 2d 567, 572 (E.D.N.C. 2009) (citation omitted); see United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 837-38 (1983); Griffin, 403 U.S. at 102.

As the Supreme Court has concluded in its examination of the class-based animus requirement in § 1985(3) actions, animus against non-union employees of a non-union entity does not embody the kind of class-based animus contemplated by § 1985(3),

and § 1985(3) does not reach conspiracies against workers who refuse to join a union. <u>Scott</u>, 463 U.S. at 835, 838-39.

Here, Plaintiff contends that Gilbarco and Teamsters Union conspired against him because he was a non-union member. (Proposed Am. Compl. (Doc. 27-1) at 4.) The <u>Scott</u> holding is controlling insofar as Plaintiff alleges the conspiracy was animated by his status as a non-union employee. Even if this court accepts the Plaintiff's allegations of a conspiracy among Gilbarco and Teamsters Union, the Plaintiff has not alleged a "class-based, invidiously discriminatory animus" motivation as required by § 1985. Furthermore, a party may not use section 1985(3) to redress the deprivation of rights arising from employment as created by Title VII. <u>Ward</u>, 597 F. Supp. 2d at 572.

Additionally, in order to maintain a cause of action under § 1986, a plaintiff must necessarily prove a civil conspiracy in violation of 42 U.S.C. § 1985, upon which § 1986 is derivative. <u>See</u> <u>Clark v. Clabaugh</u>, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994) ("In order to maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy."); <u>see also</u> <u>Jenkins v. Trs. of Sandhills Cmty. Coll.</u>, Nos. 199CV00664, 100CV00166, 2002 WL 31941503, at *4 (M.D.N.C. Dec. 3, 2002); <u>Wilson v. Wilson</u>, No. 1:11CVcv182, 2011 WL

-38-

1328859, at *3 (M.D.N.C. Apr. 1, 2011). For the reasons laid out above, Plaintiff has failed to sufficiently plead a conspiracy in violation of § 1985. Therefore, Plaintiff has necessarily failed to sufficiently plead a § 1986 claim. See Haynes v. City of Durham, No. 1:12cv1090, 2014 WL 2864470, at *9 (M.D.N.C. June 24, 2014).

The issues raised above regarding Plaintiff's claims under 42 U.S.C. §§ 1985 and 1986 are "substantive [and] procedural considerations" that make aspects of Plaintiff's proposed amended complaint "clearly . . . futile." See Davis, 615 F.2d at 613. Because this futility is apparent on the face of the proposed amended complaint, this court will deny leave to amend to plead those claims.

## VI. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. 15) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (Doc. 26) Defendant's Joint Affidavit is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to File Third Amended Complaint and Add Defendant (Doc. 27) is **DENIED.**

A judgment in accordance with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 7th day of March, 2017.

_____
            United States District Judge